Michael COTHERN, et al., Plaintiffs,

v.

Arthur L. MALLORY, et al., Defendants.

No. 82–4105–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

May 31, 1983.

J. Kent Lowry, Hendren & Andrae, Jefferson City, Mo., for plaintiffs.

Nancy D. Kelley, Jefferson City, Mo., for defendants.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

This action arises, in part, as an appeal under the Education of Handicapped Persons Act. 20 U.S.C. § 1401 *et seq.* In Count I of their complaint, the plaintiffs contend that the placement of their handicapped son in State School Number 55 at Eldon, Missouri, was not an appropriate placement under the Act. The plaintiffs additionally contend in Count II that the composition of the three-member hearing panel which recommended their child's placement in the state school violated their due process rights to a fair and impartial hearing, and in Count III that the educational program proposed by the State failed "to meet the needs and maximize the capabilities" of their handicapped son as required by Section 162.670 *et seq.* of the Missouri Revised Statutes.[1] For the reasons which follow, the Court finds in favor of the defendants on all three counts.

### I. FINDINGS OF FACT

1. The plaintiffs, who are the parents of a handicapped child, reside in Camdenton, Missouri. Defendant Mallory is the Commissioner of the Missouri Department of Elementary and Secondary Education. Defendant Hall is the Assistant Commissioner for the Division of Special Education. Defendant Heskett is the Superintendent of State Schools for the Severely Handicapped. The defendant State Board of Education is created in accordance with Article IX, Section 2(a), of the Missouri Constitution; it is responsible for the operation of

---

1. On the eve of trial, the plaintiffs asked leave to amend their complaint to state a fourth count under the Rehabilitation. Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. § 794. The Court denied leave since the State was clearly unable to prepare an adequate defense in the short time remaining before trial.

all state schools for the severely handicapped.

2. Jeffrey Cothern, the son of the plaintiffs, is a seven-year-old child who suffers from Down's Syndrome and other handicapping conditions. He is considered "severely handicapped" by the State of Missouri, in accordance with Section 162.675(3) of the Revised Statutes of Missouri.

3. On September 17, 1980, the plaintiffs' son was presented to Camdenton, Missouri R–III School District for evaluation and placement. The School District conducted the evaluation, found the child to be "severely handicapped," and referred him to a state school for the severely handicapped in Camdenton. The child was enrolled at the state school on September 26, 1980, and attended classes for approximately 23 days. On October 31, 1980, the plaintiffs removed their son from the state school and placed him in a private institution in Paola, Kansas. The child remains enrolled at the private institution in Kansas to this date.

4. The plaintiffs initiated a review of their son's previous placement in the state school at Camdenton in August of 1981. The Camdenton R–III School District conducted the review and on October 20, 1981, referred the plaintiffs' son to the State Board of Education for placement. On November 19, 1981, the State Board of Education completed their evaluation and placed the child in State School Number 55 in Eldon, Missouri. The child was not enrolled in the state school.

5. The plaintiffs appealed the Board's decision to place their child at State School Number 55. In accordance with Section 162.961(1) of the Revised Statutes of Missouri, an informal conference was conducted on December 14, 1981. After the conference, the plaintiffs requested a formal due process hearing which is provided them by Section 162.961(2). In accordance with Section 162.961(2), the State convened a three-member hearing panel to determine the issues arising from the placement of the plaintiffs' handicapped child. The plaintiffs and the Board each selected one panel member. The plaintiffs were permitted, but were not required, to select a panel member from a list of capable persons compiled by the State. The plaintiffs made their selection from that list. The State did the same. The two panel members then selected a third member in accordance with Section 162.961(2). The plaintiffs were informed on April 9, 1982 that the person selected by the Board, James Caccamo, had withdrawn and that the Board had selected another person from the approved list. On April 18, 1982, the Board endorsed Caccamo as an expert witness who would testify on the Board's behalf.

6. The formal hearing was conducted on April 29, 1982. The plaintiffs objected to the expert testimony of Caccamo on the ground that he favored the positions taken by the Board and objected to the presence of the substituted member of the panel on the ground that he, because he was selected by the Board, must be biased in favor of the Board. The plaintiffs were represented by counsel at the hearing. In its ruling of May 6, 1982, the full panel held that State School Number 55 offered a free and appropriate public education to the plaintiffs' son in the least restrictive environment. The panel's ruling emphasized the availability of parental involvement and of mainstreaming opportunities at the state school which were not available to the child at its private residential placement in Kansas. The panel made detailed recommendations with respect to the communication skills that the plaintiffs' son should be taught at the state school.

7. The State School Number 55 classroom for the severely handicapped is contained in the Eldon Public High School. Twelve severely handicapped children, whose ages range between six and twenty years, are educated in the state school classroom. These children are taught by a special education teacher, who is certified to instruct severely handicapped children, and by a classroom aide. Additional specialized instruction is rendered by a speech therapist, a physical therapist, an occupational therapist, and a physical education teacher. Other services which a particular child

might need are available to the state school through contracts with other specialists.

8. The twelve children who attend the state school are day students. Their classes commence at 9:30 A.M. and conclude at 2:30 P.M. These children interact with non-handicapped children during lunch and recess periods. Additional mainstreaming occurs during tutoring sessions provided by non-handicapped high school students. The children return to their respective families at the end of the school day.

9. The plaintiffs' son is mentally and physically handicapped as a result of the Down's Syndrome from which he suffers. The child's functioning places him in the severe range of mental retardation as "mental retardation" is defined by the American Association on Mental Deficiency. His retardation requires an educational program which emphasizes intensive speech and language development, and which promotes the acquisition of other skills that enable him to function without the constant assistance of others.

10. In its evaluation of the plaintiffs' child, the State's experts recommended that the child receive a minimum of two hours of speech therapy. One of the two hours was to be taught by a certified speech therapist, while the other hour was to be taught by an aide trained in speech therapy. The State's experts also recommended that highly specific goals and objectives be developed for the speech program, that the speech therapist and his aide confer frequently on the speech program being offered the child, that speech therapy be inserted in the child's entire educational program, and that the child remain in an environment with his family rather than in a residential environment apart from his family.

11. State School Number 55 is able to provide plaintiffs' son with an independent educational program ("I.E.P.") which emphasizes the development of speech, language and other skills which enhance his ability to function without the constant assistance of others. The special education teacher is also specially certified to manage the behavior of their child. When the plaintiffs' son enrolled in the state school at Camdenton in 1980, an I.E.P. which emphasized speech and language development was prepared for their son. It originally contemplated that the child would receive training from a certified speech therapist one day each week and that the training would be continued throughout the remainder of the week by the regular teacher who had been instructed by the therapist. The plaintiffs initially signified their agreement with this program. The child, however, only remained in the Camdenton State School for 23 days. The plaintiffs removed him from the school because a certified therapist was not working with their child twice a week. The plaintiffs were told by the regular classroom teacher that their son was progressing very well. The child's special education teacher, Peggy Robinson, impressed the Court as an exceptionally professional and dedicated teacher. Her demeanor clearly demonstrated to the Court that she had genuine concern about the plaintiffs' decision to remove their son from the Camdenton school system since she had witnessed steady improvement in his communication skills.

12. The plaintiffs initiated the August, 1981 administrative review in order to get funding from the State to pay for their son's residential placement at the private institution in Kansas. When the funding was not made available by the State, the plaintiffs decided to challenge the programs offered by the State as inappropriate. The plaintiffs were informed, however, that State School Number 55 at Eldon would use the I.E.P. developed at the private institution upon their child's enrollment. The state school offered to provide the child speech therapy at least two hours per week in two or four daily sessions. One-half of the therapy sessions were to be taught by a certified instructor, while the other half were to be taught by a trained aide. The state school also informed the plaintiffs that the I.E.P. could be altered after the school had an opportunity to observe the child in a classroom setting. The plaintiffs did not enroll their son in the state school.

The state school was never given an opportunity to demonstrate or implement its educational program developed for the plaintiffs' child.

13. The private institution which the plaintiffs' son presently attends provides the child with an integrated educational program. Like the program at State School Number 55, the child attends school with non-handicapped students. The classes at the institution commence at 8:45 A.M. and conclude at 3:15 P.M. The school day includes interaction with non-handicapped children at recess and lunch periods. With the exception of the adult staff members who are not handicapped, the child spends almost the entirety of his day with other handicapped children. He lives in a dorm which houses only handicapped students. His two roommates are both handicapped. The child is able to return home for approximately one weekend each month and for approximately two weeks at the beginning and at the end of summer.

14. While at the private institution, the plaintiffs' son receives individual speech therapy of less than two hours per week in four daily sessions. One twenty-minute session is conducted on each of the four days. Three of the sessions are conducted by a certified specialist, while the fourth is conducted by a trained aide.

## II. CONCLUSIONS OF LAW

Though the plaintiffs' complaint states three counts, there are two general issues which the Court must resolve. The Court must first determine whether the plaintiffs were denied due process during their administrative challenge to the educational program developed for their son. If their due process rights were not violated, then the Court must finally determine whether the educational program developed for the plaintiffs' son met the minimum requirements of federal and state law. The Court resolves both issues in favor of the State.

### A. The Plaintiffs Received Due Process.

Section 162.961 of the Revised Statutes of Missouri provides the plaintiffs with an administrative review procedure under which they challenged the educational program developed for their handicapped son. It states, in pertinent part, as follows:

1. The review provided for in section 162.950 shall be conducted by the chief administrative officer of the responsible school district or his designee. The review shall be informal, witnesses need not be sworn and a record of the proceedings need not be made. The school district or the state department of elementary and secondary education shall see that the parent or guardian or his representative is advised of and permitted to review all diagnoses, evaluations and reevaluations obtained by the board of education or the state department of elementary and secondary education which pertain to the child. The school district or state department of elementary and secondary education shall fully advise the parents or guardian or their representative of each reason relied upon by it in taking the proposed action. The parents or guardian or their representative may present any information whether written or oral to the officer which pertains to the recommended action. Cross-examination shall be permitted.

2. If a satisfactory solution is not reached at this administrative review, the parent or guardian may appeal within ten days to the board of education of the district or, in the case of a state school, to the state board of education. The board or its delegated representative shall within ten days after receiving notice empower a hearing panel of three persons who are not directly connected with the original decision and who are not employees of the board to which the appeal has been made. All of the panel members shall have some knowledge or training in the area of disability involved in the appeal and none shall have a personal or professional interest which would conflict with his or her objectivity in the hearing. *One person shall be appointed by the board or its delegated representative and one person shall be appointed at the recommen-*

*dation of the parent or guardian.* The third person shall be appointed by mutual agreement and shall serve as the chairman of the panel.

\* \* \* \* \* \*

5. After review of all evidence presented and a proper deliberation, the hearing panel shall by majority vote determine its findings, conclusions, and decision in the matter in question. The report of the hearing panel shall be forwarded immediately in writing to the parents or guardian of the child and to the president of the appropriate board of education.

Section 162.961(1), (2) and (5), R.S.Mo.1978 (emphasis supplied).

The plaintiffs contend in Count II of their complaint that they were denied their due process rights under this Section when the State offered a substitute panel member and endorsed as an expert witness the panel member who was originally chosen. With respect to the substitution, it is clear that the statute does not prohibit either party from making a substitution. So long as the substitute has some knowledge or training with respect to the issues to be addressed by the hearing panel and has no personal or professional interest in the case, the substitute is qualified to sit on the panel. The plaintiffs did not offer any evidence which suggested that the substituted panel member was unqualified under the statute.

The plaintiffs additionally contend that the substituted panel member was biased in favor of the State. In support of that contention, the plaintiffs argue that the substitute must have been biased because he was chosen by the State. Their argument is without merit. The State is statutorily required to select a panel member. If the mere act of making a selection was sufficient to prove bias, the statutorily mandated review process would be frustrated. In fact, the State could turn the plaintiffs' argument against any selection made by the plaintiffs. Since the plaintiffs did

not offer any evidence of bias at the hearing or during the bench trial of this cause, their assertion of bias fails.

Finally, the plaintiffs contend that the hearing before the three-member panel violated due process because the State's expert testified favorably to the State. This argument is also without merit. The plaintiffs could hardly expect the State to endorse an expert who would not testify favorably to its position. All of the evidence introduced at trial showed that the procedures enumerated in Section 162.961 were followed. The plaintiffs received all of the consideration that was due them under the statute. The Court, therefore, holds that the plaintiffs were not denied due process during the administrative review of their son's educational placement and that the hearing was, therefore, fair and impartial as required by 20 U.S.C. § 1415.

**B. Educational Placement Meets Federal and State Standards.**

■ In Counts I and III, the plaintiffs seek a reversal of the hearing panel's decision that the educational program offered their son at State School Number 55 was appropriate under federal and state law, and also seek reimbursement of the money which they have expended in placing their child at the private institution in Kansas. Their evidence consisted essentially of a comparison of the programs offered at the state school and at the private institution. For the following reasons, the Court finds that the program developed by the state is not only "appropriate" under federal law, but is also able "to meet the needs and maximize the capabilities" of the plaintiffs' handicapped child.

1. *Federal Standards.*[2] The Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.,* provides state and local government agencies with federal money for assistance in the education of handicapped children. To qualify for the assistance, a state must demonstrate that it

**2.** All of the factual and legal conclusions made in this subsection apply with equal force to the conclusions in the subsequent subsection on state law standards.

has implemented a policy which assures all handicapped children the right to a free "appropriate" education. 20 U.S.C. § 1412(1). *See,* Section 162.670, R.S.Mo. 1978. This requires a state to first develop a plan, 20 U.S.C. § 1412(2), and then to establish procedural safeguards, 20 U.S.C. § 1415. *See,* Section 162.961, R.S.Mo.1978. Any plan developed by a state must be ultimately approved by the Commissioner of Education before federal financial assistance will be rendered. 20 U.S.C. § 1413. The plan developed by Missouri is not under attack by the plaintiffs.

Any party aggrieved by a state administrative decision is authorized to bring a civil action in either a state court or a federal district court. 20 U.S.C. § 1415(e)(2). The plaintiffs have sought review in this Court of the "appropriateness" of the I.E.P. developed for their handicapped son. In *Board of Education of Westchester County v. Rowley,* — U.S. —, 102 S.Ct. 3034, 3041–49, 73 L.Ed.2d 690 (1982), the Supreme Court held that the Act's requirement of an "appropriate" education is satisfied when a state provides personalized instruction with sufficient support services to permit the handicapped child to benefit educationally from that instruction. The instruction and services (1) must be provided at public expenses, (2) must meet a state's educational standards, (3) must approximate grade levels used in a state's regular education, and (4) must comport with the I.E.P. developed for the child. *Id.*

The plaintiffs have not offered any evidence which suggests that the instruction and services offered by the State are not offered at public expense, do not meet the State's educational standards, or do not approximate grade levels used by the State in its regular education programs. Their contentions focus on the sufficiency of the I.E.P. actually developed for their son. They argued at trial that the I.E.P. was inappropriate because it did not provide for sufficient speech and language training by a certified specialist, for sufficient behavior management, for sufficient integration with non-handicapped children, and for a residential placement. Their evidence at trial was nothing more than a comparison of the program at State School Number 55 with the program at the private residential institution in Kansas. The state school was damned, while the private institution was praised.

The I.E.P. offered the plaintiffs' son by State School Number 55 provides their son with an appropriate education under federal law. In fact, it is not only appropriate under federal law, but is also better than the residential program offered as a comparison. The evidence at trial demonstrated that the plaintiffs' son was progressing steadily when he was removed from the program at the state school in Camdenton. The plaintiffs contended at the time of the removal that they were not satisfied with the speech and language program offered at the state school. They did not attempt, however, to discuss any measures for altering the program in effect at that time. When they sought full administrative review of the program the following year, they were informed that an I.E.P. is generally altered after the child has been observed for a short period of time. Though they were ultimately offered essentially all that they had requested with respect to speech and language training, the plaintiffs chose not to enroll their son in the state school at Eldon. They continued to seek state funding for their child's placement in a private institution.

With respect to the speech and language training, the State offered to provide the plaintiffs' child with a minimum of two hours of therapy. One hour of therapy was to be provided by a certified specialist, while the other was to be provided by a trained aide. The evidence demonstrated that a properly trained aide could be as effective as a certified specialist. Though the plaintiffs contended to the contrary, they offered no evidence which showed that the aides at State School Number 55 were not able to perform the approved therapy. In addition, the state school developed a program which required the integration of therapy throughout the course of the child's daily classroom instruction. The private in-

stitution, on the other hand, only provides the plaintiffs' child with four twenty-minute therapy sessions, though three of those sessions are conducted by a certified specialist.

The state school also provides the plaintiffs' child with sufficient behavior management training and sufficient integration with non-handicapped children. The handicapped children educated at State School Number 55 are taught by a properly certified special education teacher who is trained in the science of behavior management. The school also makes other specialists available to the handicapped children. In addition, the handicapped students of State School Number 55 are integrated with non-handicapped students. The classroom for the handicapped is located within the public high school. The handicapped children interact with better developed older handicapped children within the classroom, and with non-handicapped children at lunch, recess and tutorial periods. The plaintiffs' child, if enrolled at the state school, would also interact with his parents and brother, and the persons his family encounters daily. The private institution, by comparison, provides less integration. It provides no tutorial sessions and houses the handicapped children in a dormitory in which only other handicapped children reside.

Finally, the state school program is more appropriate because it is not residential. The experts of the State and the private institution agreed that a residential placement was not necessary for the education of the plaintiffs' son. In fact, the residential placement is probably inappropriate, since expert testimony suggested that a handicapped child's educational progress is generally enhanced by regular contact with members of the child's family and community. Additionally, the residential placement of the plaintiffs' son is not a placement in the "least restrictive environment" given the residential placement's potential harmful effect. 20 U.S.C. § 4015(5)(B); 34 C.F.R. § 300.552(d). Thus, the Court holds that the I.E.P. developed for the plaintiffs' son meets all of the requirements of the Act and all of the standards enunciated by the Supreme Court in its *Rowley* opinion.

2. *State Standards.* The plaintiffs have alleged in Count III that the I.E.P. developed for their son violates the state standards established under Section 162.670 of the Revised Statutes of Missouri. Section 162.670 declares as a policy of the State that all state schools provide special education services sufficient to "meet the needs and maximize the capabilities" of severely handicapped children. *See also* 20 U.S.C. § 1412(1). The plaintiffs contend that Section 162.670 places a higher standard on the State than does the federal "appropriateness" standard. The Court is not required, however, to determine the relationship between the federal and state standards, since it finds, on the evidence discussed in the subsection on the federal standards, that the I.E.P. developed for the plaintiffs' son meets his needs and maximizes his capabilities. The plaintiffs' additional contention under this count that the longer-than-normal bus ride to State School Number 55 would be detrimental to their son's education is without merit. They argued at trial that because their son would most likely fall asleep on the bus ride and would take approximately 20 minutes to awaken, their son would be deprived of 20 minutes of educational time. Their argument, however, was not based on fact. Since they never enrolled the child in the state school, there was no occasion for their son to fall asleep or for the State to discuss measures for combatting any problem which might exist.

The evidence at trial made it clear to the Court that the plaintiffs simply never gave the state schools a chance. Thus, the Court is compelled to conclude that the plaintiffs have failed to carry their burden of proof on any of the three counts of their complaint.

Accordingly, it is hereby

ORDERED that judgment on all three counts be entered in favor of the defendants. It is further

ORDERED that each party bear its own costs.